**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Case No.

JANET MONSON,

    Plaintiff,

v.

STATE OF COLORADO, and
COLORADO DEPARTMENT
OF HUMAN SERVICES,

    Defendant.

___

**COMPLAINT AND JURY DEMAND**
___

Plaintiff Janet Monson, by and through counsel, Finger Law, P.C., brings this Complaint and Jury Demand against the Defendants, the State of Colorado and the Colorado Department of Human Services ("DHS"), and alleges:

**INTRODUCTION**

1. This is an action by Janet Monson, a talented and highly educated woman of Korean heritage, against the State of Colorado and the Colorado Department of Human Services, seeking damages to redress violations of Plaintiff's rights relating to discriminatory pay practices which disproportionately pay white and non-Asian Pacific employees more than the Plaintiff for equal or substantially equal work. Prior to the initiation of this complaint, Ms. Monson sough to remediate the discriminatory pay issue through internal complaints and grievances within the Department of Human Services.

2. These efforts have been rebuffed with the Department refusing to provide the Plaintiff an explanation as to why she is receiving unequal pay. Additionally, Ms. Monson's raising of the issue of unequal pay and discriminatory practices has caused management to target her. On information and belief this targeting includes a plan to demote or terminate her.

## PARTIES

3. Plaintiff, Janet Monson, is an Asian (Korean) female who is employed by the State of Colorado, and the Colorado Department of Human Services. She has the appearance of a person who is Asian and female, and she has an accent which also identifies her as someone who is of Asian descent. She is the Director of Nursing (classified in the state system as Nurse VI) at Wheat Ridge Regional Center. Ms. Monson has 13 years of nursing experience with the Defendants. She has been in the position of Director of Nursing since April 2016. Prior to that, she held the positions of Nurse I, II, and III.

4. Defendant State of Colorado is a state of the United States and the Colorado Department of Human Services is a political agency and governmental department of the state, within the executive branch. Defendants at all relevant times were Plaintiff's "employer" within the meaning of relevant statutes. The Defendants are employers as defined by anti-discrimination statutes, including 42 U.S.C. § 2000e.

## JURISDICTION AND VENUE

5. Plaintiff is a resident of Colorado, with a residence address located at 9140 W. 35th Ave., Wheat Ridge, CO 80033.

6. The Defendant, the State of Colorado, is a political entity, a state and part of the United States of America. It is an employer as defined by 42 U.S.C. § 2000e and is prohibited from

discriminatory employment practices based on race, creed, color, national origin, and sex. Colorado and the Department of Human Services of Colorado receive federal funds from the United States to operate numerous programs, and as such are obligated to abide by federal anti-discrimination laws. The State of Colorado is a unitary employer and pays employees salaries and compensation and provides employment-related benefits, such as health insurance. The state also contributes for employees to a Public Employee Retirement Account (PERA).

7. This Court has jurisdiction over the action pursuant to 28 U.S.C. § 1331, because the instant action revolves around federal questions arising between the parties.

8. This Court has jurisdiction over this matter, pursuant to 42 U.S.C. §. 2000e-5; 28 U.S.C. § 1331; 28 U.S.C. § 1343(a).

9. The events, transactions, acts, and omissions of this action occurred within the District of Colorado, and all parties are located therein.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and (b).

**ADMINISTRATIVE EXHAUSTION**

11. Plaintiff timely satisfied her statutory obligation to exhaust administrative remedies by timely filing a charge of discrimination against the Defendant with the Equal Employment Opportunity Commission on or about June 29, 2018.

12. On March 28, 2019, the EEOC issued a Notice of Right to Sue and the Plaintiff brings this civil action within ninety (90) days of having received that notice.

**FACTUAL ALLEGATIONS**

13. On September 11, 2006, Ms. Monson was hired by the Defendant into the position of Nurse I, an entry level nursing position, and has been employed with the Department of Human

Services for approximately 13 years.

14. Ms. Monson is a female, and her race and national origin is Asian (Korean). She is a citizen of the United States.

15. Ms. Monson's salary at the time she was hired was $4,288/month.

16. Ms. Monson was hired to work at the Wheat Ridge Regional Center. The Wheat Ridge Regional Center is an agency within the Department of Human Services. It houses and cares for adults with disabilities.

17. The Colorado Department of Human Services operates three regional centers, one in Wheat Ridge, one in Pueblo, and one in Grand Junction.

18. Ms. Monson's work performance was satisfactory or well above satisfactory as a Nurse I, as reflected in her evaluations.

19. On or about February 15, 2009, Ms. Monson obtained a promotion to the position of Nurse II. As a Nurse II, Ms. Monson's salary was $4,980.94/month.

20. Ms. Monson's work performance was satisfactory or well above satisfactory as a Nurse II, as reflected in her evaluations.

21. On or about April 3, 2012, Ms. Monson obtained a promotion to the position of Nurse III (Nurse Supervisor). Ms. Monson's salary was $5,229/month.

22. Ms. Monson's work performance as a Nurse III was satisfactory or well above satisfactory, as reflected in her evaluations.

23. On or about May 11, 2016, Ms. Monson competed for and was promoted to the position of Director of Nursing (Nurse VI). She was paid $7,360/month.

24. Ms. Monson in her initial evaluation as a Nurse VI received an overall score of

exceeding expectations.

25. Ms. Monson is highly educated. She has a licensure as a registered nurse, which she obtained with an associate degree from Front Range Community College with a 4.0 out of 4.0 grade point average.

26. She also has a Bachelor of Science in Nursing from the University of Colorado, where she had a G.P.A. of 3.9 out of 4.0.

27. Ms. Monson completed clinical training, and has experience from working at, the Tri County Health Department, the Jefferson County Health Department, and Jefferson County Kaiser Grants.

28. Prior to working as a nurse, Ms. Monson successfully owned and managed her own import and export business.

29. Ms. Monson's current supervisor is April Grimsley, a white female, who is responsible for overall management of the Wheat Ridge facilities.

30. Ms. Monson has also in the past been supervised by Dawn Jacobs, a white female.

31. The management structure of the Department is all white or nearly all white. By information and belief, there are no Asians in any management position at or above the level that the Plaintiff occupies.

32. Ms. Grimsley is supervised by a white female, Georgia Edson, who is supervised by a white male, Mark Wester.

33. In or about August 2018, Ms. Monson learned that her counterparts, the Directors of Nursing in Grand Junction and Pueblo, who are not Asian or of Korean descent, were making more than she was. Pay levels for Nurse VIs, Vs, VIs, and IIIs are reflected in **Exhibit A**.

34. In 2018, Ms. Monson was making $93,624/year.

35. The Director of Nursing of the Pueblo Regional Center, who is a black male and holds a lesser classification of Nurse V, was making $100,236.

36. The Director of Nursing of the Grand Junction Regional Center, who is a white female and holds a lesser classification of Nurse V, was making $106,812.

37. Plaintiff sought to learn the reason for her lesser pay than the other Directors of Nursing who even held a lower class, but the Defendant failed to provide a reason for the pay disparity.

38. By information and belief, of all persons classified as Nurse VIs, and of all Directors of Nursing, in the Department of Human Services, Ms. Monson was and is the lowest paid. This is not accounted for by years in the position.

39. The median Nurse V and VI combined pay was approximately $104,000, a difference of $10,400 from what Ms. Monson is paid.

40. The highest paid Nurse VI was paid, in 2018, a salary of $131,412 per year.

41. Ms. Monson also learned that she was paid less than non-Asian-Pacific persons who were Mid-Level Providers (a.k.a. Nurse IV), two levels below her. For instance, her direct subordinate was paid $113,496 per year.

42. She was paid less than every single Mid-Level Provider.

43. Ms. Monson also learned that she was paid less than most Nurse IIIs.

44. Her other direct subordinate, who is a white male and who was a Nurse III, was paid $99,696 annually.

45. That subordinate received a pay increase shortly after this point, such that he was

making well over $10,000 and possibly $20,000 more than the Plaintiff.

46. The Directors of Nursing at the other facilities had the same or fewer duties compared to the Plaintiff.

47. The position descriptions for the Directors of Nursing show that Ms. Monson had greater responsibilities than other Directors of Nursing.

48. Ms. Monson is responsible for a greater number of nurses than the other Directors of Nursing.

49. Ms. Monson is responsible for providing services to a greater number of patient-clients than the other Directors of Nursing.

50. Ms. Monson is responsible for supervising more staff than the other Directors of Nursing.

51. Ms. Monson has been paid less than non-Asian-Pacific individuals occupying positions below her, despite others performing fewer job duties than she. These employees are generally white and not Asian or Korean. The disparity in pay has continued through the present time.

52. Ms. Monson has sought pay increases starting in May 2016.

53. Ms. Monson's requests for pay equity have been denied or ignored.

54. Ms. Monson between June and December 2018 initiated a grievance process seeking equal pay and an end to the discriminatory and retaliatory environment.

55. Ms. Monson's grievance was initially ignored. Ms. Monson then complained that the Defendant was not complying with the State's personnel grievance procedures, which are mandated under the State Personnel Board's Rules.

56. Ms. Monson's grievance was heard by Mark Wester, a white male Division Director, who stated that he didn't know why Ms. Monson's pay was unequal to other Directors and that an investigation was being conducted.

57. Ms. Monson received no relief or even response for the internal complaint about unequal wages and such is reflected in Mr. Wester's letter relating to the grievance.

58. Mr. Wester's written response to the grievance was issued on September 17, 2018.

59. The Department hired an outside investigator, who charged the Department $25,298.35 for work and gave the Defendant a discount of $26,598.08 from the total hourly charges of $51,896.43.

60. The total charges exceeded the amount of back pay that Ms. Monson could have claimed in 2018.

61. The Defendant took steps to retaliate against Ms. Monson for making outcries of discrimination.

62. The retaliatory acts have occurred in close proximity in time to Ms. Monson's engaging in protected activity; no retaliatory act was ever taken against Ms. Monson from 2006, when she was hired through 2016, when she began the position of Director of Nursing.

63. As Ms. Monson took more and more action to request equal pay, the Defendant escalated and issued greater adverse actions and her supervisor Dawn Jacobs exhibited greater hostility to her.

64. Ms. Monson's charge of discrimination and grievances angered and offended her supervisor, Dawn Jacobs, and others above her.

65. Ms. Jacobs engaged in frequent angry and offensive outbursts at Ms. Monson in

meetings with her.

66. Ms. Jacobs belittles Ms. Monson and denigrates her abilities in front of other staff.

67. Ms. Jacobs, who is white, has made inappropriate and discriminatory comments about the accents of Asians.

68. The retaliation included the issuance of corrective action and potentially discipline, demotion, or termination.

69. On June 29, 2018, Ms. Monson filed a charge of discrimination with the EEOC, based on her race, (Asian-Pacific), national origin (Korean), sex (female), and for retaliation.

70. On March 28, 2019, Ms. Monson received a Right to Sue letter from the EEOC.

71. One month after the Right to Sue letter issued, on April 30, 2019, Ms. Monson was informed that she was under investigation for possible disciplinary action for failure to perform job duties and was placed on indefinite administrative leave.

72. On April 30, 3029, Ms. Monson was informed that she was being subjected to a pre-disciplinary meeting called a "Rule 6-10" meeting.

73. Ms. Monson has been diagnosed and treated for a stress reaction and anxiety as a result of her work environment and the hostilities of supervisors.

74. Ms. Monson has had to utilize her personal and sick time, as well as FMLA time, because of the stress and anxiety, from July 5 to August 6, 2018, and December 22, 2018 through January 1, 2019, and from May 20, 2019 through June 10, 2019.

75. Ms. Monson has been injured as a direct and proximate result of the discrimination and retaliation including loss of pay and loss of PERA retirement benefits, as well as other economic losses.

76. Ms. Monson has been injured emotionally and psychologically, lost enjoyment of life, suffered anxiety, upset, and distress and incurred medical expenses and personal expenses from the discriminatory and retaliatory acts of the Defendants.

## FIRST CLAIM FOR RELIEF

(Discrimination under 42 U.S.C. §2000e-2)

77. Plaintiff re-alleges and incorporates by reference all paragraphs above.

78. 42 U.S.C. § 2000e-2 provides that: It shall be an unlawful employment practice for an employer (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

79. The above-stated facts constitute disparate treatment on the basis of national origin in terms and conditions of employment, and in the compensation of Plaintiff compared to white and non-Asian-Pacific workers.

80. All of the Nurse VI's perform substantially equal work Plaintiff's pay level is below not only those of equivalent positions but also those in positions classified well below her.

81. The other nurses who receive higher pay are not of Ms. Monson's protected classes and most are white.

82. The Department has failed and refused to provide any legitimate business

justification for the disparity.

83. The difference in pay between the Plaintiff and other employees is based in whole or in part on Plaintiff's protected classes as a person with Asian-Pacific and Korean background.

84. Defendant's conduct proximately caused the losses and injuries to Plaintiff, including reduced income and as specified above.

85. Defendant's acts were a violation of Plaintiff's federally protected rights.

## SECOND CLAIM FOR RELIEF

(Retaliation under 42 U.S.C. §2000e-3)

86. Plaintiff re-alleges and incorporates herein all paragraphs above.

87. 42 U.S.C. § 2000e-3 (a) provides that: It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

88. Plaintiff, in speaking out about discriminatory pay inequity and other discriminatory acts, filing and participating in a pay differential grievance process, participating in a pay differential investigation in late 2018, and filing a charge of discrimination and participating in that process, engaged in protected activity each time she raised the issue of pay differential.

89. Plaintiff also engaged in protected activity in filing State Personnel Board appeals

alleging discrimination.

90. The Defendants have retaliated against the Plaintiff by targeting her for disciplinary action and termination, downgrading her performance evaluations so that she obtains lesser raises (if any), calling disciplinary meetings against her, issuing her corrective actions back pay and front pay, of placing Plaintiff on administrative leave, initiating investigations against her, calling disciplinary meetings against her, and issuing corrective actions against her, as well as threatening her with write-ups and through an abusive environment.

91. The Defendant's actions were taken based on Ms. Monson's engaging in protected activities and a violation of 42 U.S.C. § 2000e-3.

## PRAYER FOR RELIEF

Plaintiff prays that this Court enter judgment for the Plaintiff and award Plaintiff damages, including:

1. Economic damages, including without limitation lost back wages and benefits.

2. Future wage loss and benefit loss, including the loss that will occur because of implications to Plaintiff's PERA retirement benefits that are based on wages;

3. Compensatory damages, including without limitation, special damages, medical expenses, and damages for loss of reputation, loss of opportunity for professional growth, loss of opportunity for promotion;

4. Non-economic damages for emotional distress, pain and suffering, inconvenience, mental anguish, loss of reputation, and other non-pecuniary losses;

5. An award of reasonable attorney's fees and costs pursuant to 42 U.S.C. § 2000e-5;

6. Pre-judgment and post-judgment interest as provided for under the law from the

earliest possible date; and

      7.     Such other relief as the Court deems just and proper.

Plaintiff requests a trial by jury.

     Respectfully submitted 24th day of May, 2019.

                                          FINGER LAW, P.C.

                                          */s/ Casey J. Leier*
                                          Casey J. Leier, # 45155
                                          William S. Finger, # 7224
                                          P.O. Box 1477
                                          Evergreen, CO 80437
                                          Phone: (303) 674-6955
                                          Fax: (303) 674-6684
                                          Email: casey@fingerlawpc.com
                                          Bill@fingerlawpc.com
                                          Attorneys for Plaintiff

Plaintiff's Address:
9140 W. 35th Ave.
Wheat Ridge, CO 80033